IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
**Charleston Division**

| | |
|---|---|
| JUSTIN ATKINS, JUSTIN ROACH, and JAMES HULL, <br><br> Plaintiffs, individually, and on behalf of a class of similarly-situated individuals, <br> v. <br><br> AT&T MOBILITY SERVICES, LLC., <br><br> Defendant. | Civil Action No.: 2:18-cv-00599 |

## NOTICE OF REMOVAL

TO THE CLERK OF THE DISTRICT COURT:

PLEASE TAKE NOTICE that Defendant AT&T Mobility Services, LLC ("AT&T Mobility") hereby removes this civil action from the Circuit Court of Kanawha County, West Virginia to the United States District Court for the Southern District of West Virginia pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), and under 28 U.S.C. §§ 1441(a) and 1446 on the following grounds:

**I.   BACKGROUND AND PROCEDURAL HISTORY**

1. On June 5, 2015, Plaintiffs Joseph Atkins, Tim Bondurant, Justin Roach, James Hull and John Gasper[1] ("Plaintiffs") filed a putative class action in the Circuit Court for Kanawha County, West Virginia ("Atkins I"). Atkins I was designated as Civil Action No. 15-C-1134.

---

[1] During their employment, Plaintiffs Tim Bondurant and John Gasper executed arbitration agreements with AT&T Mobility. After filing the Complaint, they voluntarily dismissed themselves from the Lawsuit.

2. In Atkins I, Plaintiffs alleged that AT&T Mobility violated the West Virginia Wage Payment and Collections Act ("WPCA") in two respects by (1) "assign[ing] Plaintiffs' employment wages and other employees' wages despite not having valid wage assignments" and (2) failing to pay Plaintiffs and "other former employees all of the wages they had earned within the time periods mandated by the WPCA."

3. In Atkins I, Plaintiffs sought to represent all ***current and former*** AT&T Mobility employees whose wages allegedly were unlawfully assigned and who allegedly were not paid of all of the wages they had earned within the time periods mandated by the WPCA.

4. On August 17, 2018, AT&T Mobility removed Atkins I to this Court based on CAFA diversity jurisdiction. *See* Pacer Civil Docket for *Atkins v. AT&T Mobility Services, LLC*, No. 2:15-cv-12416 (S.D. W. Va. 2015). Unable to dispute jurisdiction and apparently desiring not to proceed in federal court, on August 21, 2015, Plaintiffs filed a Notice of Voluntary Dismissal. *Id.* This Court dismissed Atkins I on August 24, 2015. *Id.*

5. On September 15, 2015, Plaintiffs filed another putative class action in the Circuit Court for Kanawha County, West Virginia ("Atkins II"). Atkins II was designated as Civil Action No. 15-C-1736.

6. As filed, Atkins II comprised a smaller putative class litigation that Atkins I.

7. In Atkins II, Plaintiffs again alleged that AT&T Mobility violated the West Virginia Wage Payment and Collection Act ("WPCA") in two respects by (1) "assign[ing] Plaintiffs' employment wages and other employees' wages despite not having valid wage assignments" and (2) failing to pay Plaintiffs and "other former employees all of the wages they had earned within the time periods mandated by the WPCA." Compl., ¶¶ 22, 30.

8. However, in Atkins II, Plaintiffs no longer sought to represent current employees and, instead, sought to bring a class action under Rule 23 of the West Virginia Rules of Civil Procedure on behalf of "[a]ll persons *formerly* employed by Defendant in West Virginia within five years of the filing of this Complaint who fit both of the following criteria:

    a. Whose employment wages were assigned by Defendant without an assignment (1) having been in place for a period not exceeding one year from the date of the assignment; (2) acknowledged by the party making the same before a notary public or other office authorized to take acknowledgements; (3) specifying thereon the total amount due and collectible by virtue of the assignment; (4) stating that three fourths of the periodical earnings or wages of the assignment shall at all times be exempt from such assignment; and (5) the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon, and

    b. Who were not paid after the cessation of their employment all of the wages they had earned within the time periods mandated by the West Virginia Wage Payment and Collection Act."

Compl., ¶ 32 (emphasis added).[2]

9. Plaintiffs' seek to recover separate damages for their unlawful wage assignment and late payment claims. Compl., ¶¶ 41-47.

10. With regard to their assignment claim under West Virginia Code § 21-5-3(e), Plaintiffs seek to recover "the amount of the assignments, treble damages, statutory interest and

---

[2] In Atkins II, Plaintiffs also sought to avoid removal based on diversity jurisdiction by stipulating, among other things, that no Plaintiff would seek individual damages in excess of $75,000.

3

attorneys' fees and costs pursuant to West Virginia Code § 21-5-1, *et seq.*" on behalf of themselves and all putative class members. Compl., ¶¶ 41-44.

11. With regard to their late payment claim, Plaintiffs separately seek to recover "the amount of the assignments, treble damages, statutory interest and attorneys' fees and costs pursuant to West Virginia Code § 21-5-1, *et seq.*" on behalf of themselves and all putative class members. Compl., ¶¶ 45-47.

12. Plaintiffs contend that the beginning of the applicable class period for both their assignment and late payment claims is five years prior to the filing of the Complaint. Compl., ¶ 32.

13. On May 15, 2017, Plaintiffs filed their Motion for Class Certification and Integrated Memorandum of Law ("Motion for Class Certification") proposing to represent a class that was broader than the proposed class defined in their Complaint. *Compare* Motion for Class Certification at 3 *with* Compl., ¶¶ 32-33.

14. AT&T opposed Plaintiffs' Motion for Class Certification on multiple grounds, including the scope of the proposed class.

15. The issue of the scope of the action class remained unresolved until March 22, 2018 when the Circuit Court for Kanawha County, West Virginia (the "State Court") held a hearing on Plaintiffs' Motion for Class Certification.

16. During the hearing, the State Court permitted Plaintiffs to move to amend their proposed class definition. March 22, 2018 Hearing Transcript (attached as **Exhibit 4**) at 12-13.

17. Plaintiffs orally moved to define the class as "[a]ll commissioned employees currently or formally [sic] employed by defendant in West Virginia within five years of the filing of this complaint through the present that were subject to AT&T Mobility Consumer related [sic]

4

Sales Compensation Policy" but excluding individuals with existing arbitration agreements or who previously released their claims. *Id.*, at 13. Plaintiffs also clarified that the alleged unlawful practice in this case were the "chargebacks" AT&T Mobility applied pursuant to its retails sales compensation plans. *Id.*, at 11-12.

18. The State Court orally granted the amended motion for class certification and asked Plaintiffs to prepare the appropriate order. *Id.*, at 14.

19. On April 19, 2018, Plaintiffs provided AT&T Mobility with their proposed order. The proposed order defines the certified class as:

> All commissioned employees currently or formerly employed by Defendant in West Virginia within five years of the filing of this complaint through the present who were subject to AT&T Mobility's consumer related sales compensation policy. The class excludes any persons with an existing arbitration clause with AT&T, as well as any persons who have released their claims.

**Exhibit 5** (Plaintiff's Proposed Order).

20. The State Court has not yet entered an order granting Plaintiffs' amended motion for class certification.

21. As required by 28 U.S.C. § 1446(a), process, pleadings, and orders served upon AT&T Mobility are attached hereto as **Exhibit 1**. As required by Rule 3.4(b) of the Local Rules of the United States District Court for the Southern District of West Virginia, a copy of the docket sheet from the Circuit Court for Kanawha County, West Virginia is attached hereto as **Exhibit 2**.

## II. <u>JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

22. The Court has original jurisdiction over this action pursuant to CAFA. *See* 28 U.S.C. § 1332(d)(2). CAFA cases are not subject to "at least three of the traditional limitations on

removal: (1) the rule that, in a diversity case, a defendant cannot remove a case from its home forum, § 1441(b); (2) ***the rule that a defendant cannot remove a diversity case once it has been pending in state court for more than a year***, § 1446(b); and (3) the rule that all defendants must consent to removal." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 331 (4th Cir. 2008) (emphasis added). CAFA requires only that (1) at least one plaintiff and one defendant are citizens of different states, (2) there are at least 100 class members, and (3) the amount in controversy exceed $5 million, in the aggregate, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).

### A. Diversity of Citizenship

23. Under CAFA, the diversity of citizenship sufficient to confer original jurisdiction on the federal courts is "minimal diversity"—i.e., the parties are diverse as long as the citizenship of any one plaintiff differs from that of at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A); *Johnson v. Advance Am.*, 549 F.3d 932, 936 (4th Cir. 2008).

24. As defined by 28 U.S.C. § 1332(d)(2)(A), diversity of citizenship exists in this case because at least one of the Plaintiffs is a citizen of a state different from that of AT&T Mobility. According to the Complaint, all three remaining Plaintiffs are citizens of the State of West Virginia. Complaint ¶¶ 1, 3-4.

25. AT&T Mobility is organized under the laws of the State of Delaware and has its principal place of business in the State of Georgia. Complaint ¶ 6. *See* 28 U.S.C. § 1332(c)(1) (citizenship of corporation for diversity purposes is the state(s) where it has its principal place of business or where it is incorporated); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010) (holding, under CAFA, that a limited liability company is an "unincorporated association" as used in 28 U.S.C. § 1332(d)(10), whose citizenship is that of the state under whose

laws it is organized and the state where it has its principal place of business). Thus, AT&T Mobility is a citizen of a state other than West Virginia.

26. Minimal diversity exists because at least one Plaintiff is a citizen of a state different from that of AT&T Mobility.

### B. Number of Class Members

27. The certified class in this case consists of "[a]ll commissioned employees currently or formally [sic] employed by defendant in West Virginia within five years of the filing of this complaint through the present that were subject to AT&T Mobility Consumer related [sic] Sales Compensation Policy" but excluding individuals with arbitration agreements or who released their claims. March 22, 2018 Hearing Transcript at 14.

28. AT&T Mobility has reviewed the employment and compensation records related to the employees who have worked for AT&T Mobility in West Virginia during the five years preceding the filing of the Complaint in this Lawsuit. Declaration of Donna Norwood-Cooper ("Cooper Decl.") ¶ 18, attached hereto as **Exhibit 6**; Declaration of Linda Hallock ("Hallock Decl.") ¶ 19, attached hereto as **Exhibit 7**.

29. Those records reflect that, since September 15, 2010, there are approximately 651 individuals who are members of the certified class. Cooper Decl. ¶ 19; Hallock Decl. ¶ 20.

30. Therefore, the certified class is comprised of 100 or more members and satisfies CAFA's numerosity requirement.

### C. Amount in Controversy

31. The amount in controversy for removal purposes "is what the plaintiff claims or demands, rather than an estimation of the plaintiff's likely recovery if he prevails."[3] *Scaralto v.*

---

[3] Indeed, AT&T Mobility contests that Plaintiffs are entitled to any recovery.

*Ferrell*, 826 F. Supp. 2d 960, 968 (S.D. W. Va. 2011). Thus, for purposes of removal, the Court must assume that Plaintiffs will succeed in recovering that which they demand in their Complaint on behalf of themselves and the classes of individuals they seek to represent. *Id.*, at 967 ("The amount in controversy is not what the plaintiffs, his lawyer, or some judge thinks a jury would award the plaintiff assuming he prevails on the merits. It is what the plaintiff claims to be entitled to or demands.").

32. The claims of class members "shall be aggregated" to determine whether the jurisdictional minimum of $5,000,000 has been met. *See* 28 U.S.C. §§ 1332(d)(2), (d)(6), *see also Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 158 (4th Cir. 2010).

33. In this case, Plaintiffs seek damages for two distinct claims under the WPCA. First, on behalf of themselves and all current and former commissioned employees subject to AT&T Mobility's retail sales compensation plans, Plaintiffs seek damages for AT&T Mobility's alleged unlawful wage assignments (the "Assignment Class").

34. On behalf of the Assignment Class, Plaintiffs seek treble damages, statutory interest, and attorneys' fees. Compl., ¶ 41. AT&T Mobility has reviewed its employment and compensation records related to individuals who worked for AT&T in West Virginia during the five years preceding the filing of the Complaint and who may be members of the Assignment Class. Those records reflect that the Assignment Class may be entitled to recover at least $5,027,998.08 in damages, exclusive of attorneys' fees and costs. AT&T Mobility arrived at this number by calculating the "value" of the chargebacks to members of the Assignment Class for the period of five year preceding the filing of the Complaint. Cooper Decl. ¶ 20; Hallock Decl. ¶ 21. AT&T calculated the total "value" of the "chargebacks" to the Assignment Class at least

$1,675,999.36. *Id.* If that value is trebled, the Assignment Class may be entitled to recover at least $5,027,998.08.

35. Second, on behalf of themselves and all former commissioned employees subject to AT&T Mobility's retail sales compensation plans, Plaintiffs separately seek damages for AT&T Mobility's alleged late payment of final wages (the "Payment Class"). Compl., ¶¶ 41, 47.

36. On behalf of the Payment Class, Plaintiffs seek treble damages, statutory interest, and attorneys' fees and costs. *Id.*, ¶ 47. AT&T Mobility has reviewed its employment and compensation records related to individuals who worked for AT&T Mobility in West Virginia during the five years preceding the filing of the Complaint and who may be members of the Payment Class. Those records reflect that the Payment Class may be entitled to recover at least $2,118,293.22, exclusive of attorneys' fees and costs. AT&T Mobility arrived at this number by calculating the "value" of the chargebacks to members of the Payment Class for the period of five years preceding the filing of the Complaint. Cooper Decl. ¶ 22; Hallock Decl. ¶ 23. AT&T Mobility calculated the total "value" of the "chargebacks" to the Payment Class at least $706,097.74. *Id.* If Plaintiffs recover treble damages, as they seek in the Complaint, the Payment Class may be entitled to recover at least $2,118,293.22.

37. In the aggregate, the Assignment and Payment Classes may be entitled to recover $7,146,291.30. Thus, Plaintiffs' claimed damages, in the aggregate, far exceed the $5 million amount in controversy threshold for CAFA removal.

38. Plaintiffs, however, also specifically seek to recover, and the WPCA permits the recovery of, attorneys' fees. Complaint ¶¶ 44, 47; W. Va. Code 21-5-12 ("The court may in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant.");

*Amick v. C&T Dev. Co.*, 187 W. Va. 115, 118 (1992). As this Court has held in no uncertain terms, "[a]lthough attorneys' fees generally do not constitute part of the amount in controversy, when a statute or a contract specifically makes recovery of attorneys' fees available, they will be included in the amount in controversy." *Credit Acceptance Corp. v. Long*, 2010 U.S. Dist. LEXIS 101112, at *19-20 (S.D. W. Va. Sept. 22, 2010) (citing *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983)); *Patton v. Fifth Third Bank*, 2006 U.S. Dist. LEXIS 23138, at *3 (S.D. W. Va. Mar. 24, 2006); *see also Francis v. Allstate Ins. Co.* 709 F.3d at 367 (attorneys' fees are included in the amount in controversy calculation if they are authorized by statute or provided for by contract). In this case, those fees may be substantial. If the putative class were to recover 33% of the Plaintiffs' total claims in attorneys' fees, an amount similar to that recovered in other wage cases[4], then attorneys' fees in this case would be approximately $2.38 million. With attorneys' fees, the aggregate amount in controversy is nearly double the amount required for removal under CAFA.

39.     Actual evidence is not required to show that the minimal amount in controversy is met, and reasonable extrapolations from the parties' assertions will suffice. *See e.g., Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010); *Hayes v. Equitable Energy Resources, Co.*, 266 F.3d 560, 573 (6th Cir. 2001). Based on the above analysis, the potential recovery of the Assignment and Payment Classes both alone and when combined with potential attorneys' fees far

---

[4] AT&T Mobility does not concede that 33% would be an appropriate percentage of attorneys' fees, or that Plaintiffs ultimately can demonstrate an entitlement to recovery of attorneys' fees. Nevertheless, 33% of the potential recovery is a valid benchmark for use in calculating the amount in controversy. *See e.g., Archbold v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 92855, at *11 (S.D. W. Va. July 14, 2015) (Chambers, J.) ("Both state and federal courts in West Virginia recognize the presumptive reasonableness of an attorneys' fee equal to one-third of a recovery."); *Eriksen Constr. Co. v. Morey*, 923 F. Supp. 878, 881 (S.D. W. Va. 1996) ("The Court notes a one-third contingency fee is presumptively reasonable in West Virginia.") (citing *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 329-330 (1986)).

10

exceeds the amount in controversy $5,000,000 minimum. Thus, AT&T Mobility sufficiently has demonstrated that the CAFA's amount in controversy requirement is satisfied.

40. As a result, this Court has original jurisdiction under CAFA.

### III. VENUE

41. This case has been removed from the Circuit Court of Kanawha County, West Virginia.

42. The Circuit Court of Kanawha County, West Virginia is located in the territory covered by the Southern District of West Virginia, Charleston Division.

43. Thus, venue properly lies in the United States District Court for the Southern District of West Virginia, Charleston Division. 28 U.S.C. § 1441(a). *See also* 28 U.S.C. § 129(a).

### IV. REMOVAL IS TIMELY

44. Generally, a defendant must file a notice of removal within thirty days following receipt of the complaint. 28 U.S.C. § 1446(b)(1). If the case stated by the initial pleading is not removable, however, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3). In either event, removal must be evident from the face of the document to trigger either of the thirty-day periods. *See Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997) (noting that the "grounds [for removal must] be apparent within the four corners of the initial pleading or subsequent paper"); *Lijkel Dijkstra v. Carenbauer*, No. 5:11CV152, 2012 U.S. Dist. LEXIS 60556, *14-15 (N.D. W. Va.) ("'[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.'" (quoting *Harris v. Bankers Life and Cas.*

*Co.*, 425 F.3d 689, 698 (9th Cir. 2005)); *see also Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 143-45 (2d Cir. 2014) (holding that "the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or set forth facts from which an amount in controversy" that meets the statutory requirement can be ascertained.).

45. AT&T Mobility could not ascertain the removability of this case under CAFA based on the four corners of Plaintiffs' Complaint or any other document in this case. Indeed, the class proposed in Plaintiffs' Complaint was intentionally worded so as to avoid CAFA jurisdiction. Similarly, CAFA jurisdiction was not evident from the four corners of Plaintiffs' Motion for Class Certification. In fact, the class proposed in Plaintiffs' Motion for Class Certification is not the class that was ultimately certified by this Court as Plaintiffs amended their class definition during the hearing.

46. Prior to the hearing on the Motion for Class Certification, Plaintiffs' did not serve AT&T Mobility with any "amended pleading, motion, order or other paper" from which AT&T Mobility could ascertain the identity of the putative class members or the potential class damages.

47. AT&T Mobility undertook its own investigation to determine the exact size of the putative class and the amount in controversy. Because AT&T Mobility's own investigation, and not any paper filed in this case, provided the basis for removal, AT&T Mobility was not bound by the two thirty-day periods set forth in Section 1446(b)(1) and (b)(3).

48. To the extent that the State Court's certification of Plaintiffs' class orally on March 22, 2018 could be considered to be "order or other paper from which it may first be ascertained

that the case is one which is or has become removable" triggering the 30-day deadline in Section 1446(b)(3), AT&T Mobility has met that deadline with this Notice of Removal.[5]

49. The one-year deadline typically applicable to removal does not apply to cases removed under CAFA. 28 U.S.C. § 1453(b) ("the 1-year limitation under section 1446(b) shall not apply).

50. Thus, AT&T Mobility's removal of this case is timely.

## V. NOTICE TO CLERK AND ADVERSE PARTIES

51. In accordance with 28 U.S.C. § 1446(d), AT&T Mobility has given contemporaneous written notice of this Notice of Removal to all adverse parties and the clerk for the Circuit Court of Kanawha County, West Virginia. *See* **Exhibit 3** (State Court Notice of Removal).

Date: April 23, 2018                    Respectfully submitted,

                                                                                          /s/ James F. Neale
                                                                     James F. Neale (WV Bar # (9787))
                                                                     McGuireWoods LLP
                                                                     Court Square Building
                                                                     310 4th Street, NE, Suite 300
                                                                     Post Office Box 1288
                                                                     Charlottesville, VA 22902
                                                                     (434) 977.2534 (Telephone)
                                                                     (434) 980.2254 (Facsimile)

                                                                     *Counsel for Defendant AT&T Mobility Services LLC*

---

[5] The State Court still has not entered a written order certifying a class.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
**Charleston Division**

| | |
|---|---|
| JUSTIN ATKINS, JUSTIN ROACH, )<br>and JAMES HULL, )<br>)<br>    Plaintiffs, individually, and on behalf of )<br>    a class of similarly-situated individuals, )<br>v. )<br>)<br>AT&T MOBILITY SERVICES, LLC., )<br>)<br>    Defendant. )<br>_____) | Civil Action No.: _____ |

## CERTIFICATE OF SERVICE

    I, James F. Neale, counsel for Defendant AT&T Mobility Services, LLC, do hereby certify that the foregoing instrument was filed electronically using the CM/ECF system which will distribute copies of the filing to all counsel of record and that this was separately sent via U.S. Mail, first class, postage prepaid, to Rodney A. Smith, Esquire and Jonathan R. Marshall, Esquire, Bailey & Glasser, LLP, 209 Capitol Street, Charleston, West Virginia 25301 and L. Lee Javins II, Esquire and D. Balke Carter, Jr., Esquire, Mark Barney, Esquire, Bucci, Bailey & Javins L.C., Post Office Box 13712, Charleston, West Virginia 25337, this 23rd day of April, 2018.

/s/ James F. Neale
James F. Neale

101610555_2.docx