UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOSEPH ATKINS,
JUSTIN ROACH, and
JAMES HULL, individually, and
on behalf of a class of
similarly-situated persons,

       Plaintiffs,

v.                      Civil Action no. 2:18-cv-00599

AT&T MOBILITY SERVICES, LLC,

       Defendant.

MEMORANDUM OPINION & ORDER

      Pending is the plaintiffs' motion to remand, filed on
May 23, 2018.

I. Background

      Plaintiffs Joseph Atkins, Justin Roach, and James Hull[1]
initiated this putative class action in the Circuit Court for
Kanawha County, West Virginia on September 15, 2015.  See
Compl., ECF No. 1-1, Ex. 1-1, at 6-13 ("Compl.").  The
plaintiffs were employed in a sales capacity by defendant AT&T
Mobility Services, LLC ("AT&T") between September 2010 and
September 2015, and were compensated by both hourly wages and

---

[1] Tim Bondurant and John Gasper were also named plaintiffs until
they voluntarily dismissed themselves pursuant to the execution
of their arbitration agreements.  See Notice of Removal, ECF No.
1, at 1.

sales commissions through the AT&T consumer retail sales compensation plan ("Commission Plan").  See Pls.' Memo. Supp. Mot. Remand, ECF No. 6 ("Pls.' Memo."), at 2.  The Commission Plan applied "chargebacks" based on certain events that reduced the monthly commission payment to employees.  See id.

The complaint filed in state court alleges that the "chargeback" process implemented by AT&T constitutes an assignment of wages to AT&T for which AT&T did not obtain a valid wage assignment from the plaintiffs, as required under the West Virginia Wage Payment and Collection Act ("WPCA"), W. Va. Code § 21-5-1 et seq.  See Compl. ¶¶ 13-23.  The plaintiffs also assert that AT&T violated the WPCA by failing "to pay other former employees all of the wages they had earned within the time periods mandated by the WPCA."  See id. ¶¶ 24-30.  The plaintiffs sought relief on behalf of the following proposed class ("First Class Definition"):

> All persons formerly employed by the Defendant in West Virginia within five years of the filing of the filing [sic] of this Complaint who fit both of the following criteria:
>
> (a)  Whose employment wages were assigned by Defendant without an assignment (1) having been in place for a period not exceeding one year from the date of the assignment; (2) acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgements; (3) specifying thereon the total amount due and collectible by virtue of the assignment; (4) stating that three fourths of the periodical earnings or wages of the assignor shall

at all times be exempt from such assignment; and (5) the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon,[2] and

(b) Who were not paid after the cessation of their employment all of the wages they had earned within the time periods mandated by West Virginia Wage Payment and Collection Act.

Id. ¶ 32. The complaint did not allege any specific damage amounts on either an individual or class basis. See generally id.; see also Def.'s Resp. to Pls.' Mot. Remand, ECF No. 7 ("Def.'s Resp."), at 3.

The plaintiffs filed a motion for class certification on May 15, 2017 and proposed the following class definition ("Second Class Definition"):

All persons formerly or currently employed by the Defendant in West Virginia within five years of the filing of this Complaint through the present whose employment wages were assigned by Defendant without first obtaining a wage assignment pursuant to West Virginia's Wage Payment and Collection Act, West Virginia Code § 21-5-1, et seq.

Pls.' Mot. Class Cert., ECF No. 5-2, Ex. B., at 3. AT&T opposed the motion for class certification on several grounds, including the scope of the proposed class. See Notice of Removal, ECF No. 1, at 4.

The circuit court held a hearing on the motion for class certification on March 22, 2018. See Pls.' Memo., at 3.

---

[2] The court notes that subparagraph(a) tracks language found in W. Va. Code § 21-5-3(e).

At the hearing, the plaintiffs moved to amend the proposed class definition. See Class Cert. Hearing Transcript, ECF No. 5-3, Ex. C, at 13-14. The judge orally granted the amended definition and certified the class as such. See id. at 14-15. The plaintiffs prepared a proposed order with the following class definition ("Third Class Definition"):

> All commissioned employees currently or formerly employed by Defendant in West Virginia within five years of the filing of this complaint through the present who were subject to AT&T Mobility's consumer related sales compensation policy. The class excludes any persons with an existing arbitration clause with AT&T, as well as any persons who have released their claims.

See Notice of Removal, ECF No. 1, at 5. AT&T did not address this proposed order. See Pls.' Memo., at 3.

On April 23, 2018, AT&T removed the case by asserting that this court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). See Notice of Removal, ECF No. 1, at 1. The plaintiffs filed a motion to remand on May 23, 2018, in which they argue that AT&T's removal was untimely. See Pls.' Mot. Remand, ECF No. 5, at 1. AT&T filed a response in opposition to the plaintiffs' motion to remand, see Def.'s Resp., to which the plaintiffs filed a reply, see Pls.' Reply, ECF No. 8 ("Pls.' Reply").

## II. Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). CAFA extends federal subject matter jurisdiction over "interstate" class actions "of national importance." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (citing CAFA, Pub. L. No. 190-2, § 2(b)(2), 119 Stat. 4, 5 (2005)). CAFA gives federal district courts original jurisdiction over civil actions that meet three requirements: (1) the putative class must have more than 100 members (numerosity); (2) the amount in controversy must exceed five million dollars ($5,000,000.00) in the aggregate, exclusive of interest and costs (amount in controversy); and (3) the parties must be minimally diverse in citizenship (minimal diversity[3]). Id. at 592. A "class action" is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more

---

[3] "Minimal diversity" exists when "any member of a class of plaintiffs is a citizen of a State different from any defendant". AU Optronics Corp. v. South Carolina, 699 F.3d 385, 388 (4th Cir. 2012) (citing § 1332(d)(2)(A)).

representative persons as a class action."  28 U.S.C.
§ 1332(d)(1)(B).[4]

Any civil action over which a federal court would have
original jurisdiction may be removed from state court to that
federal court by the defendant.  28 U.S.C. § 1441(a).  A
defendant seeking removal must file a notice of removal, signed
pursuant to Rule 11 of the Federal Rules of Civil Procedure and
containing a "short and plain statement of the grounds for
removal," in the federal district court for the district and
division in which the action is pending.  28 U.S.C. § 1446(a).
Notice of removal must be filed within thirty (30) days after
receiving, "through service or otherwise, of a copy of the
initial pleading setting forth the claim for relief upon which
such action or proceeding is based, or . . . the service of
summons."  28 U.S.C. § 1446(b)(1); see also 28 U.S.C. § 1453(b)
(stating that removal procedures for class actions are the same
as other civil actions under 28 U.S.C. § 1446).  If a case is
not removable at the initial pleading but later becomes
removable, "a notice of removal may be filed within 30 days
after receipt by the defendant, through service or otherwise, of

_____

[4] CAFA also applies to a group of non-class actions defined as
"mass actions."  See 28 U.S.C. § 1332(d)(1)(B).  However, this
distinction is not relevant to the instant case because AT&T has
not argued that this action should be treated as a mass action
under CAFA.

a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

A defendant sued in a class action in a state court is presumptively entitled to remove the proceedings to federal court when the three CAFA requirements are satisfied. Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys., 928 F.3d 325, 330 (4th Cir. 2019) (citing 28 U.S.C. § 1453(b)).[5] The statutory grant of removal of class actions under § 1453(b) also eliminates three traditional limitations on removal. First, § 1453 allows a defendant to remove a case filed in its home forum. See Palisades Collections LLC v. Shorts, 552 F.3d 327, 331 (4th Cir. 2008) (citing 28 U.S.C. § 1441(b)). Second, the statute allows removal "by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b). Third, class actions are not limited by the usual rule that civil actions cannot be removed more than one year after commencement in state court.

---

[5] CAFA jurisdiction is excluded in three types of class actions: (1) covered securities, (2) internal affairs of a corporation, and (3) securities-related interests. See 28 U.S.C. § 1332(d)(9) (original jurisdiction); 28 U.S.C. § 1453(d) (removal); see also Dominion Energy, 928 F.3d at 330-31. The removing party bears the burden of establishing federal jurisdiction over the class action, but the party seeking remand bears the burden of proving that one of the three CAFA exceptions to removal applies. Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 681 (4th Cir. 2018). This action does not involve any of the three exceptions.

See Palisades Collections, 552 F.3d at 331; see also 28 U.S.C. § 1446(c)(1); 28 U.S.C. § 1453(b).

A case removed from state court may nonetheless be remanded at any time before final judgment if it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). A party may also file a motion to remand the case to state court "on the basis of any defect other than lack of subject matter jurisdiction" within thirty (30) days after the filing of the notice of removal. Id. Such defects may include not filing a notice of removal in accordance with the procedures of 28 U.S.C. § 1446. See, e.g., Lovern v. Gen. Motors Corp., 121 F.3d 160, 161 (4th Cir. 1997) (reviewing a motion to remand on the ground that the notice of removal was filed untimely). When removal under CAFA is challenged, "the removing party bears the burden of demonstrating that removal jurisdiction is proper." Strawn v. AT&T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008) (emphasis in original). However, the Supreme Court has held that there is "no antiremoval presumption" for cases removed under CAFA because Congress intended for CAFA "to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014) (citing Knowles, 133 S. Ct. 1345, 1350 (2013)).

III. Discussion

The plaintiffs' only objection to removal is that AT&T failed to remove this action in a timely manner within thirty days of when the action became removable, pursuant to 28 U.S.C. § 1446(b). The plaintiffs contend that this action became removable under CAFA when they filed the motion for class certification on May 15, 2017,[6] and that the notice of removal filed on April 23, 2018 was therefore untimely. See Pls.' Memo., at 1. In support of this contention, the plaintiffs note that AT&T initiated removal after the class certification order was made during the March 22, 2018 hearing. See id. at 8-9. The plaintiffs argue that the class definition in this class certification order was "materially indistinguishable" from the proposed definition in the motion for class certification. See id. at 9. According to the plaintiffs, this demonstrates that the motion for class certification provided all the necessary

---

[6] AT&T does not refute the argument that a motion for class certification would qualify as an "other paper" for removal under 28 U.S.C. § 1446(b)(3) and could begin the thirty-day period if it clearly established the criteria for CAFA jurisdiction. See Def.'s Resp., at 16; see also Pls.' Memo., at 7 (citing Williams v. Ruan Transp. Corp., No. 1:13-CV-01157-LJO-SAB, 2013 WL 5492205, at *7 (E.D. Cal. Oct. 2, 2013) (". . . Defendants were on notice that this action involved a class of at least one hundred by Plaintiffs' motion for class certification which is an 'other paper' under section 1446.")).

information for AT&T to determine removability under CAFA, over a year before it filed for removal.  See id.

AT&T disagrees, stating that neither the motion for class certification nor any order or other document provided by the plaintiffs informs the defendant as to the number of class members or the amount in controversy, and thus, the thirty-day removal period under 28 U.S.C. § 1446(b) was never triggered. See Def.'s Resp., at 5-9.  In particular, AT&T argues that the motion for class certification presents an "impermissible and unascertainable 'failsafe' class definition," which, combined with the "generic description of damages" from the complaint, does not affirmatively reveal that the amount in controversy exceeded the CAFA threshold.  See id. at 7-8.  AT&T also asserts that it was not under any obligation to conduct its own investigation to determine removability.  See id. at 11-15.  As a result, AT&T contends that it was entitled to remove the case at any time after discovering for itself that the requirements for removability under CAFA were satisfied.  See id. at 9-10.

The Court of Appeals for the Fourth Circuit has not ruled directly on what a plaintiff must provide to a defendant to trigger the thirty-day removal period in a CAFA case, but it has found that grounds for removal must be apparent in the plaintiff's filings:

> [W]e will not require courts to inquire into the
> subjective knowledge of the defendant, an inquiry
> that could degenerate into a mini-trial regarding
> who knew what and when. Rather, we will allow the
> court to rely on the face of the initial pleading
> and on the documents exchanged in the case by the
> parties to determine when the defendant had
> notice of the grounds for removal, <u>requiring that
> those grounds be apparent within the four corners
> of the initial pleading or subsequent paper</u>. This
> test that we adopt is consistent with that
> espoused by the Third and Fifth Circuits.

<u>Lovern</u>, 121 F.3d at 162 (citing <u>Foster v. Mut. Fire, Marine &

Inland Ins. Co.</u>, 986 F.2d 48, 53-54 (3d Cir. 1993); <u>Chapman v.

Powermatic, Inc.</u>, 969 F.2d 160, 163 (5th Cir. 1992)) (emphasis

added) (reviewing timing for removal in a diversity of

citizenship case).  District courts within the Fourth Circuit

are to rely on the "four corners" of the initial pleading or

subsequent papers in determining the knowledge of the removing

party.  <u>See</u> <u>id.</u>

        In this case, the court begins its evaluation by

determining whether the motion for class certification filed May

15, 2017, put AT&T on notice that the case met the amount in

controversy requirement for removal under CAFA.

        The key inquiry in determining whether the amount-in-

controversy requirement is satisfied for removal procedures in

CAFA cases is not what the plaintiff will actually recover, but

rather an estimate of the amount that will be at issue in the

course of the litigation.  <u>Scott v. Cricket Commc'ns, LLC</u>, 865

F.3d 189, 196 (4th Cir. 2017). "[P]laintiffs are free to purposely omit information that would allow a defendant to allege the amount in controversy with pinpoint precision." Id. (citing Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005)). A removing defendant may use reasonable estimates, inferences, and deductions to establish the amount in controversy, as long as the evidence shows it is more likely than not (i.e., a preponderance of the evidence) that a fact finder might legally conclude that damages will exceed the jurisdictional amount. Id. (citing Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002)). A defendant's notice of removal only needs to include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., 135 S. Ct. at 554.

Several circuits have established a bright-line rule for what constitutes notice of removability, particularly with respect to the amount in controversy. In Cutrone v. Mortgage Electronic Registration Systems, Inc., the Second Circuit reviewed a CAFA case in which the plaintiffs failed to provide both an aggregate amount in controversy and an estimated number of putative class members. 749 F.3d 137, 139-140 (2d Cir. 2014). The plaintiffs only gave damages for the two named plaintiffs and argued that the defendant could easily ascertain

the aggregate amount in controversy from the face of the
complaint by multiplying the named plaintiffs' damages by the
estimated number of putative class members, which was identified
in the complaint as "hundreds, and likely thousands." Id. at
145-46.

The Second Circuit ruled that the notice of removal
was timely because the thirty-day clock was never triggered.
See id. at 145. "[T]he removal clocks of 28 U.S.C. § 1446(b)
are not triggered until the plaintiff serves the defendant with
an initial pleading or other document that explicitly specifies
the amount of monetary damages sought or sets forth facts from
which an amount in controversy . . . can be ascertained." Id.
Although a defendant must still apply a "reasonable amount of
intelligence" to its reading of the plaintiff's complaint, the
Second Circuit "do[es] not require a defendant to perform an
independent investigation into a plaintiff's indeterminate
allegations to determine removability." Id. (internal citations
omitted). Therefore, a defendant is not required to consider
material outside of the complaint or other applicable documents
for facts giving rise to removability, and the removal period is
not triggered "until the plaintiff provides facts explicitly
establishing removability or alleges sufficient information for
the defendant to ascertain removability." Id.

The First Circuit has agreed with the Second Circuit's
rationale in Cutrone that the deadlines in 28 U.S.C. § 1446(b)
will be triggered "if the plaintiff's paper includes a clear
statement of the damages sought or if the plaintiff's paper sets
forth sufficient facts from which the amount in controversy can
easily be ascertained by the defendant by simple calculation."
Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 75 (1st Cir. 2014).
The First Circuit also affirmed that the defendant has no duty
"to investigate or to supply facts outside of those provided by
the plaintiff." Id.

The Seventh Circuit has likewise held that the "30-day
removal clock is triggered only by the defendant's receipt of a
pleading or other litigation paper facially revealing that the
grounds for removal are present," meaning that the pleading or
other paper must "affirmatively and unambiguously reveal[] that
the predicates for removal are present." Walker v. Trailer
Transit, Inc., 727 F.3d 819, 823–24 (7th Cir. 2013) (emphasis in
original). The court noted that every circuit that has
addressed this question has adopted a similar bright-line rule
that "requires a specific, unequivocal statement from the
plaintiff regarding the damages sought." Id. at 824 (citing
Lovern (4th Cir.) and opinions from the Second, Fifth, Eighth,
Ninth, and Tenth Circuits). This bright-line rule "promotes

clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants."  Id.

The Sixth Circuit has also held that the thirty-day clock for removal under § 1446(b) begins to run "only when the defendant receives a document from the plaintiff from which the defendant can unambiguously ascertain CAFA jurisdiction." Graiser v. Visionworks of Am., Inc., 819 F.3d 277, 285 (6th Cir. 2016).  The Sixth Circuit followed other circuits that have likewise determined that "[t]he more administrable task . . . is for the district court to 'analyz[e] what was apparent on (or easily ascertainable from) the face of the plaintiff's pleadings' and other documents that the plaintiff has sent to the defendant."  Id. (citations omitted) (citing opinions from the First, Second, Seventh, and Ninth Circuits).

The Third Circuit in Foster, to which the Fourth Circuit cites in Lovern, determined that, for removal, "the relevant test is not what the defendants purportedly knew, but what the[] documents said."  986 F.2d at 54.  The thirty-day clock begins "after receiving a writ of summons, praecipe, or complaint which in themselves provide adequate notice of federal jurisdiction."  Id.  Similarly, the Fifth Circuit in Chapman, to

which the Fourth Circuit also cites in <u>Lovern</u>, held that the thirty-day clock "starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." 969 F.2d at 163. The Fifth Circuit places the burden on the plaintiff "if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." <u>Id.</u> This bright line rule "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." <u>Id.</u>

Furthermore, in considering whether a defendant may remove a case when no document that would trigger either of the thirty-day removal periods has been provided by the plaintiff, the Second and Ninth Circuits, have determined that "§§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." <u>Roth v. CHA Hollywood Med. Ctr., L.P.</u>, 720 F.3d 1121, 1125 (9th Cir. 2013); <u>accord</u> <u>Cutrone</u>, 749 F.3d at 147 ("Section 1446(b) imposes a time limit <u>only</u> in cases in which

the plaintiff's initial pleading or subsequent document has explicitly demonstrated removability. Defendants are permitted to remove outside of these time periods when the time limits of 28 U.S.C. § 1446(b) are not triggered.") (emphasis in original).

The plaintiffs in this action argue that their motion for class certification meets the "four corners test" prescribed in Lovern by emphasizing that the motion "sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained." See Pls.' Reply, at 7 (quoting Cutrone, 749 F.3d at 145). Specifically, the plaintiffs contend that since their motion provided AT&T "a clue" that removal was available, the thirty-day period began to run on May 15, 2017 when the motion for class certification was filed. See Pls.' Memo., at 1. The plaintiffs maintain that "AT&T could have (and later did) used its own employment and compensation records to calculate: (1) the amount deducted from class members paychecks in the form of a 'Chargeback,' and (2) the amount AT&T failed to pay class members within the mandated time period." Id. at 8.

The motion for class certification does not contain any damages calculation, but merely indicates that the plaintiffs are entitled to the statutory damages allowed by the WPCA. See generally Pls.' Mot. Class Cert., ECF No. 5-2, Ex. B. The plaintiffs simply assert (repeatedly) that the damages are

"easily quantifiable" as they are set by the WPCA.  See id. at

2, 5, 9.[7]  It is likely that AT&T was in possession of all the

information necessary to calculate the amount in controversy at

the time it received the motion; however, as discussed in the

foregoing legal precedent regarding what qualifies for notice,

this is not enough to challenge the removal as untimely.  AT&T

was under no obligation to investigate its own business to

discern the amount in controversy.  See Romulus, 770 F.3d at 75;

Cutrone, 749 F.3d at 145.

          Plaintiffs nevertheless insist that in ascertaining

removability, the defendant is required to "apply a reasonable

amount of intelligence."  See Pls.' Memo., at 5-6 (quoting

Cutrone, 749 F.3d at 143).  The cases to which plaintiffs cite

in support of their contention that the motion for class

certification contained a clue to which AT&T might apply

"reasonable intelligence" to ascertain the amount in controversy

are inapposite.  Those cases involve simple multiplication or

percentage valuations of numbers already provided to the

defendant.  See, e.g., Enterprises v. Allen, No. 15CV6675KAMRER,

2016 WL 3512176, at *6 (E.D.N.Y. June 22, 2016) ("[D]efendant

---

[7] The court notes that despite the plaintiffs' repeated assertion
that calculating damages would be "easily quantifiable" under
the WPCA, the plaintiffs neglect to quantify any damages
themselves to provide even an estimate of potential damages.

would have been on notice that plaintiff's 50 percent share of the property (valued at $170,000 at the time of purchase) was worth $85,000 . . . an amount exceeding the jurisdictional threshold by $10,000."); <u>Fun Servs. of Kansas City v. Love</u>, No. 11-0244-CV-W-ODS, 2011 WL 1843253, at *2 (W.D. Mo. May 11, 2011) (finding that the amount in controversy could be calculated from the motion for class certification that lists 44,462 violations with a statutory penalty of $500 per violation).

The plaintiffs also fail to estimate the potential number of members in the proposed class, a number that would be necessary to calculate a reasonable estimate of the amount in controversy. Calculating the amount in controversy requires knowing the approximate number of members in the proposed class, the value of the "chargebacks" for each class member, and any damages multiplier,[8] plus statutory interest and attorney's fees. <u>See</u> Notice of Removal, ECF No. 1, at 8-9 (explaining how AT&T calculated estimated damages). None of these numbers, or any numbers, are provided in the complaint, the motion for class certification, or any paper provided to the defendant by the plaintiff. <u>See</u> Def.'s Resp., at 5. The plaintiffs furthermore do not contend that they ever provided these numbers to the

---

[8] The plaintiffs claim treble damages, <u>see</u> Compl., ¶¶ 44, 47, which AT&T adopts and applies in calculating the amount in controversy, <u>see</u> Notice of Removal, ECF No. 1, at 8-9.

defendant.  <u>See generally</u> Pls.' Memo; Pls.' Reply.  Calculating these numbers requires investigating facts outside of the "four corners of the initial pleading or subsequent paper," which directly contradicts Fourth Circuit precedent and the bright-line rule of other circuits.  <u>See</u> Lovern, 121 F.3d at 162.

The court finds that the thirty-day period for removal under 28 U.S.C. § 1446(b) was not triggered in this action because the plaintiffs did not provide AT&T with sufficient facts by which the amount in controversy could be reasonably or readily ascertained from the "four corners" of an "amended pleading, motion, order or other paper."  AT&T was permitted to remove at any time upon discovering, by its own investigation, removability under CAFA.  As such, the court need not consider AT&T's further argument regarding the number of class members in the action.[9]

_____

[9] AT&T also argues that the motion for class certification presents "nothing more than an impermissible and unascertainable 'failsafe' class definition."  Def.'s Resp., at 7-8 (citing <u>Paulino v. Dollar Gen. Corp.</u>, No. 3:12-CV-75, 2014 WL 1875326, at *3 (N.D.W. Va. May 9, 2014) ("A 'fail safe' class is one that 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.  Such a class definition is improper because a class member either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'")).

### IV. Conclusion

Accordingly, it is ORDERED that the plaintiffs' motion to remand be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to all counsel of record.

ENTER:  October 15, 2019

John T. Copenhaver, Jr.
Senior United States District Judge