UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOSEPH ATKINS,
JUSTIN ROACH, and
JAMES HULL, individually,
and on behalf of a class
of similarly-situated persons,

     Plaintiffs,

v.                                Civil Action No. 2:18-cv-00599

AT&T MOBILITY SERVICES, LLC,

     Defendant.

## MEMORANDUM OPINION & ORDER

Pending are the defendant's motion to reconsider the state circuit court order that denied the defendant's state court motion for summary judgment, filed in this court on February 1, 2019; the plaintiffs' motion for partial summary judgment, filed on September 4, 2019; and the defendant's motion for summary judgment, filed on September 4, 2019.

## I.   Background

### A.   Factual Background

This putative class action was initiated in the Circuit Court for Kanawha County, West Virginia on September 15, 2015 and removed to this court on April 23, 2018.

Plaintiffs Joseph Atkins, James Hull, and Justin Roach were employed in a retail sales capacity by defendant AT&T Mobility Services, LLC ("AT&T") during the period between September 2010 and September 2015.[1]  ECF No. 45 ("Pls.' Partial Summ. J. Mem.") at 5.  The plaintiffs were compensated by hourly wages regardless of sales activity and by commissions for selling products and services.  ECF No. 24 ("Def.'s Reconsider Mem.") at 3-4.  The focus of the motions is on the sales commissions.  Each named plaintiff voluntarily left employment with AT&T: plaintiff Atkins left in October 2011, plaintiff Hull left in December 2012, and plaintiff Roach left in April 2013.  Pls.' Partial Summ. J. Mem. at 5-6.

During the period between September 2010 and September 2015, AT&T maintained and administered retail sales compensation plans, which described how AT&T calculated and paid sales commissions to employees in a retail sales capacity.  Def.'s Reconsider Mem. at 4.  According to the terms of these retail sales compensation plans, the plaintiffs would not earn a commission on a given sale at the time of the sale.  Id. at 5.  Rather, each sale had to complete a 180-day "Vesting Period" for

---

[1] The time period is based on the proposed class definition for employees who were employed by AT&T within five years of the filing of the complaint.  The complaint was filed in the state circuit court in September 2015, so the proposed time period would cover September 2010 to September 2015.

the plaintiffs to earn a commission on the sale.  Id.  If a customer returned the product or cancelled the service that a plaintiff had sold within the 180-day period, then the plaintiff would not earn a commission on that sale.  Id.  However, AT&T advanced commission payments to the plaintiffs on a monthly basis as part of a regular commission cycle for the sales activity of the previous month, regardless of the 180-day Vesting Period.  Id.  Each commission payment made to the plaintiffs was an advance for sales that had not yet completed the Vesting Period.  Id.  AT&T says that it paid the commission advances to employees in the employees' "regular paychecks following the second pay period of each month."  See id. at 5-6.

AT&T would apply a "chargeback" to the plaintiffs in order to account for sales that did not successfully complete the Vesting Period but for which AT&T had already advanced a commission to the plaintiffs.  Id. at 6.  For any returned product or cancelled service that occurred in a given month, AT&T would apply a "chargeback" to the next month's commission advance.  See id.  The AT&T sales compensation plans define a "chargeback" as a deduction from "Commissionable Sales activity" of an employee due to the return of the product or the cancellation of the service before the completion of the 180-day Vesting Period.  See ECF No. 23-5, Ex. 5 ("AT&T Plan") at 42.

The plans also define a "chargeback" as "a deduction from Gross Sales activity." See id. at 3.  The purpose of these "chargebacks" was to reimburse AT&T.  See id. at 44.  The "chargebacks" reduced the amount of commission that AT&T advanced to the plaintiffs each month, but AT&T alleges that these deductions did not reduce the earned commissions (i.e., the commissions that had successfully completed the 180-day Vesting Period).  Def.'s Reconsider Mem. at 6.

AT&T periodically amended the sales compensation plans during the period of September 2010 and September 2015.[2]  Id. at 4.  Retail sales employees, including the plaintiffs, received training on each amended plan and submitted an acknowledgement that they understood the amended plan after each training.[3]  Id.  These employees were not eligible to receive commission payments until they completed the training for each amended sales

---

[2] AT&T maintains that the retail sales compensation plans applicable to the plaintiffs during this time period were "in all relevant respects, identical to the manner in which Plaintiffs earned, and [AT&T] calculated and paid, sales commissions."  Def.'s Reconsider Mem. at 4.  The plaintiffs do not dispute this claim.  In fact, both parties provide the same plan from April 1, 2011 as an exhibit for their own motions. See ECF No. 23-5, Ex. 5 (exhibit to AT&T's motion to reconsider); ECF No. 42-4, Ex. D (exhibit to the plaintiffs' motion for partial summary judgment).

[3] Employees "signed" the acknowledgment through a computer program.  ECF No. 23-1, Ex. 1, Tr. at 16:1-23 (deposition of plaintiff Joseph Atkins); Ex. ECF No. 42-5, Ex. E, Tr. at 33:3-12 (deposition of Donna Norwood-Cooper).

compensation plan and submitted an acknowledgment, which
authorized AT&T to deduct "chargebacks" from the employee's
commission payments.  See id.; ECF No. 28 ("Pls.' Reconsider
Opp.") at 7.  No notary public, or other officer authorized to
take acknowledgments, was present to witness an employee's
acknowledgment of the terms or conditions of commission
payments.  Pls.' Reconsider Opp. at 7.  The lack of an officer
authorized to take acknowledgments forms part of the basis of
the plaintiffs' claim of a violation of the West Virginia Wage
Payment and Collection Act.

    The two-count complaint in this case alleges two
violations of the West Virginia Wage Payment and Collection Act
("WPCA"), W. Va. Code § 21-5-1 et seq.  Count One alleges that
the "chargeback" process implemented by AT&T constitutes an
assignment of wages to AT&T for which AT&T never obtained a
valid wage assignment from the plaintiffs, as required by the
WPCA.  See ECF No. 1-1, Ex. 1-1 ("Compl.") ¶¶ 13-23, 41-44.
Under the WPCA, a valid wage assignment requires an employee's
acknowledgment of understanding before a notary public or
another officer authorized to take that acknowledgment.  See W.
Va. Code § 21-5-3(e) (2015).[4]  The plaintiffs contend that in

---

[4] **The 2015 version of the statute was passed in March 2015 and
was the version in effect in September 2015 when this case was
initiated in the state circuit court.**

utilizing these "chargebacks," AT&T violated the WPCA by assigning "[p]laintiffs' employment wages and other employees' wages despite not having valid wage assignments." Compl. ¶ 22.

Count Two alleges that AT&T violated § 21-5-4(b) of the WPCA by failing to pay employees all of the wages that they had earned within the time period mandated by the WPCA when they left employment with AT&T.  See id. ¶¶ 24–30, 45–47.  The WPCA requires that when an employee is discharged or quits or resigns, the former employee must be paid "wages due for work that the employee performed prior to the separation of employment on or before the next regular payday on which the wages would otherwise be due and payable."  W. Va. Code § 21-5-4(b) (2015) (emphasis added).

The plaintiffs also assert these allegations on behalf of a putative class of other former AT&T employees.  Id. ¶¶ 31–39.  Tim Bondurant and John Gasper were named in this lawsuit as additional plaintiffs, but they voluntarily dismissed themselves pursuant to their arbitration agreements.

B.    State Court Proceeding

After discovery, AT&T filed a motion for summary judgment in state court in which it argued that Rotruck v. Smith, No. 14-1284, 2016 WL 547190 (W. Va. Feb. 10, 2016)

(memorandum decision), an unpublished memorandum opinion of the Supreme Court of Appeals of West Virginia, was dispositive and mandated the entry of summary judgment in favor of AT&T.  See ECF No. 23-11, Ex. 11 ("Order") at 3.  AT&T argued that, based on Rotruck, an employer would only be subject to wage assignment requirements under the WPCA when the employer is acting as a creditor of the employee.  See id.  AT&T also contended that, as a matter of law, the "chargebacks" do not constitute earned wages and are therefore not subject to the requirements of the WPCA.  See id. at 5.

In response, the plaintiffs argued that three prior published cases of the Supreme Court of Appeals found that employers who assign employee wages are subject to the WPCA irrespective of a creditor relationship: Robertson v. Opequon Motors, Inc., 519 S.E.2d 843 (W. Va. 1999) (per curiam); Jones v. Tri-County Growers, Inc., 366 S.E.2d 726 (W. Va. 1988); and Clendenin Lumber & Supply Co., Inc. v. Carpenter ("Clendenin"), 305 S.E.2d 332 (W. Va. 1983).  See id. at 3-4.  The plaintiffs further asserted that commissions are included in the types of wages covered by the WPCA.  See id. at 5.  The parties make the same arguments now.

The state circuit court issued an order denying AT&T's motion for summary judgment on November 27, 2017.  Id. at 6.

The court reasoned that this case was "no different from Robertson . . . or from Jones" cited by the plaintiffs because "an employee's commissions were subsequently reduced due to costs incurred by the employer for a particular sale" in those cases. Id. at 5. The court found that Rotruck, upon which AT&T relied, was inconsistent with the WPCA and with published opinions of the Supreme Court of Appeals, and the court rejected AT&T's argument that the "chargebacks" did not constitute earned wages as a matter of law. Id. at 5-6. The court also determined that there is "a genuine issue of fact" as to whether any "chargebacks" were in excess of the amounts advanced to the plaintiffs. Id. at 5.

Shortly thereafter, on December 22, 2107, AT&T filed a motion to certify questions of law to the Supreme Court of Appeals. See ECF No. 28-9, Ex. I. AT&T asked to certify two questions. First, whether "an employer is subject to the wage assignment requirements of W. Va. Code § 21-5-3(e) only when the employer is a creditor of its own employee" based on the decision in Rotruck. Id. at 2. Second, whether W. Va. Code § 21-5-3(e) "applies to reductions from earned wages, and thus requires [AT&T] to obtain a valid wage assignment to recoup prior commission advances from future commission advances to retail sales employees." Id. The state circuit court denied

the motion to certify these questions in a hearing on March 22,
2018.  <u>See</u> Pls.' Reconsider Opp. at 9.

 Separate from the motion to certify questions of law,
the plaintiffs moved for class certification in the state
circuit court on May 15, 2017.  <u>See</u> ECF No. 6 at 3.  During the
same hearing on certifying questions on March 22, 2018, the
state circuit court orally approved the class.  <u>See</u> <u>id.</u>  The
plaintiffs prepared a proposed order with the following class
definition:

> All commissioned employees currently or formerly
> employed by Defendant in West Virginia within five
> years of the filing of this complaint through the
> present who were subject to AT&T Mobility's consumer
> related sales compensation policy.  The class excludes
> any persons with an existing arbitration clause with
> AT&T, as well as any persons who have released their
> claims.

ECF No. 1 at 5.  AT&T did not respond to the proposed order and
the state circuit court did not enter the proposed order before
the case was removed.  <u>See</u> ECF No. 6 at 3; ECF No. 1-1 at 569-
74.


C. <u>Federal Court Proceeding</u>


 On April 23, 2018, AT&T removed the case by asserting
that this court has jurisdiction pursuant to the Class Action
Fairness Act of 2005 ("CAFA"), as set forth in 28 U.S.C.
§ 1332(d).  <u>See</u> ECF No. 1 at 1.  The plaintiffs filed a motion

to remand based on untimely removal.  See ECF No. 5.  This court denied the motion to remand on October 15, 2019, see ECF No. 52, and continues to exercise diversity jurisdiction over the case.

While awaiting this court's decision on the motion to remand, on February 1, 2019, AT&T filed a motion to reconsider the state court order that denied its state court motion for summary judgment.  See ECF No. 23.  In the motion to reconsider, AT&T argues that the state court's order denying summary judgment "comprises a clear error of law" and should be reconsidered before this court.  See id. at 16.

The plaintiffs also filed a proposed order granting plaintiffs' motion for class certification on February 5, 2019. See ECF No. 26.  As previously discussed, the plaintiffs filed their motion for class certification in the state circuit court, but they have not filed a motion for class certification in this court.  The proposed order defines the same class as the proposed order from the state circuit court.  See id. at 5. AT&T only "[a]greed as to form" of the proposed order before this court.  Id. at 6.

The parties then filed cross motions for summary judgment on September 4, 2019.  The plaintiffs filed a motion for partial summary judgment on Count One, for illegal assignment of employment wages under the WPCA.  See ECF No. 42.

10

AT&T filed a motion for summary judgment to dismiss the case in
full.  See ECF No. 43.  All three motions have been fully
briefed.

## II.   Motion to Reconsider

### A.   Legal Standard

AT&T filed its motion to reconsider pursuant to Rule
54(b) of the Federal Rules of Civil Procedure.  According to
Rule 54(b), an interlocutory order "that adjudicates fewer than
all the claims . . . may be revised at any time before the entry
of a judgment adjudicating all the claims."  Fed. R. Civ. P.
54(b).  An order denying summary judgment is such an
interlocutory order.  Williams v. Strickland, 917 F.3d 763, 767
(4th Cir. 2019).  A district court retains the power to
reconsider and modify its interlocutory orders at any time prior
to final judgment when such is warranted.  Am. Canoe Ass'n v.
Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003); see
also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S.
1, 12 (1983) (noting that "every order short of a final decree
is subject to reopening at the discretion of the district
judge"); Fayetteville Investors v. Commercial Builders, Inc.,
936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is
subject to reconsideration at any time prior to the entry of a

final judgment."). However, where an order is entered by one judge and then reviewed by another judge, the latter judge should be hesitant to overrule the earlier determination. Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (affirming the district court's denial of a motion to reconsider the summary judgment award from a multidistrict litigation court).

The Fourth Circuit has applied two analyses to determine the applicable standard of a review for a motion to reconsider: (1) comparison to the standards of Rule 59(e) and 60(b) of the Federal Rules of Civil Procedure for amending a final judgment; and (2) comparison to the law-of-the-case doctrine. Under the first analysis, amending a judgment, or reconsidering a judgment, is proper on three grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); see, e.g., Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburgh, PA, 999 F. Supp. 2d 906, 919 (S.D.W. Va. 2014) (applying the these grounds to review a motion to reconsider); In re C.R. Bard, Inc., 948 F. Supp. 2d 589, 649 (S.D.W. Va. 2013) (same).

Under the second analysis, federal courts cabin revision of interlocutory orders pursuant to Rule 54(b) by treating such rulings as law of the case. Carlson, 856 F.3d at 325. The law-of-the-case doctrine provides that, in the interest of finality, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). A court may revise an interlocutory order under the law-of-the-case doctrine by application of the following three circumstances: (1) "a subsequent trial produc[ing] substantially different evidence"; (2) a change in applicable law; or (3) clear error causing "manifest injustice." Am. Canoe Ass'n, 326 F.3d at 515 (quoting Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)); see, e.g., U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC, 899 F.3d 236, 257 (4th Cir. 2018) (applying these circumstances to review a motion to reconsider); Hinkle v. Matthews, 337 F. Supp. 3d 674, 677 (S.D.W. Va. 2018) (same).

The law-of-the-case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided," but it does not "limit [courts'] power." Messenger v. Anderson, 225 U.S. 436, 444 (1912). "Law of the case . . . does not and

cannot limit the power of a court to reconsider an earlier ruling.  The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d at 515.  This court does not restrict its review to a blind adherence to the law of the case.

AT&T asserts that the state court denial of summary judgment was a clear error of law, and that reconsideration is warranted to correct this error and to prevent manifest injustice.  See Def.'s Reconsider Mem. at 16–17.

The state court denial of summary judgment was an interlocutory order.  When a case is removed to federal court, the federal district court has the power to reconsider interlocutory rulings of the state court from which the case was removed. Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co., 260 U.S. 261, 267 (1922) ("Had the cause remained in the state court, the power to reconsider would have been in that court, but when the removal was made the power passed with the cause to the District Court.").  A federal statute provides that upon removal, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."  28 U.S.C. § 1450.

The court reconsiders the state court summary judgment ruling, as requested by AT&T, in light of its substantial claim of clear error and, if sustained, to prevent manifest injustice.

B.   <u>Reconsideration</u>

AT&T posits that the case, as to Count One, turns on a singular issue: whether the wage assignment provision of the WPCA, § 21-5-3(e), applies to the "chargebacks" that AT&T made to the "unearned commission payments it advanced" to the plaintiffs.  Def.'s Reconsider Mem. at 1, 7.  AT&T outlines two arguments in support of its position.  First, that the state circuit court, in denying summary judgment, erroneously disregarded the most recent decision of the Supreme Court of Appeals of West Virginia on the subject, <u>Rotruck v. Smith</u>.  <u>See id.</u> at 10-12.  Second, that the state circuit court erroneously disregarded applicable case law that the WPCA protects only earned "wages," and that it is undisputed that AT&T never applied "chargebacks" to earned "wages."  <u>See id.</u> at 12–16.

(1)   <u>*Creditor Status and the Application of* Rotruck v. Smith</u>

AT&T argues that the state circuit court erroneously disregarded the decision of the Supreme Court of Appeals of West Virginia in <u>Rotruck v. Smith</u> when it denied summary judgment.

The state circuit court found <u>Rotruck</u> to be inconsistent with the WPCA and published opinions of the Supreme Court of Appeals. <u>See</u> Order at 5.  AT&T asserts that the decision in <u>Rotruck</u> is "dispositive of Plaintiffs' claims and, upon reconsideration, mandates the entry of summary judgment in [AT&T's] favor." Def.'s Reconsider Mem. at 12.

     The plaintiffs allege that AT&T's "chargeback" practice violates § 21-5-3(e) of the WPCA, which reads:

> No assignment of or order for future wages shall be valid for a period exceeding one year from the date of the assignment or order.  An assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and any order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided, That no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof is endorsed thereon: Provided, however, That nothing herein contained shall be construed as affecting the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees.

W. Va. Code § 21-5-3(e) (2015) (emphasis omitted).

     The WPCA does not define "assignment of . . . future wages."  Courts look to the West Virginia Consumer Credit and Protection Act ("CCPA"), W. Va. Code § 46A-1-101 <u>et seq.</u>, to determine what constitutes an assignment of wages for purposes

of WPCA requirements because both the CCPA and the WPCA "are to
be construed together" and "read in pari materia."  Clendenin,
305 S.E.2d at 336 (citing Farley v. Zapata Coal Co., 281 S.E.2d
238, 243 (W. Va. 1981)).  The definition applied from the CCPA
is for an "assignment of earnings":

> "Assignment of earnings" includes all forms of
> assignments, deductions, transfers, or sales of
> earnings to another, either as payment or as security,
> and whether stated to be revocable or nonrevocable,
> and includes any deductions authorized under the
> provisions of section three, article five, chapter
> twenty-one of this code, except deductions for union
> or club dues, pension plans, payroll savings plans,
> charities, stock purchase plans and hospitalization
> and medical insurance.

W. Va. Code § 46A-2-116 (2)(b) (2015).

In Clendenin, the appellee-employer, Clendenin Lumber
and Supply Co., maintained a policy of extending credit to
employees who desire to purchase goods from the employer store.
305 S.E.2d at 333.  The appellant-employee charged several items
to his account and entered into an agreement with the employer
to authorize the deduction of a set amount each month from the
employee's payroll to pay off the outstanding credit balance.
Id. at 333-34.  The agreement was not signed by a representative
of the employer, nor was it notarized.  Id. at 334.  After the
employee left employment and the employer sought to collect the
outstanding balance, plus interest and costs, the employee filed

suit alleging that the agreement was an unlawful assignment of wages that violated W. Va. Code § 21-5-3.  See id.

The Supreme Court of Appeals concluded that the agreement was an assignment of wages subject to the WPCA.  Id. at 338.  The court held that the phrase "to another" in the CCPA regarding an assignment of earnings "includes an employer when that employer is also the creditor of the employee."  Id. at 338.  The court based this on the idea that "it would be inconsistent for this Court to exempt employers from the provisions" of the WPCA when the employer assigns to itself future wages of an employee in satisfaction of a debt to the employer.  See id. at 337.  Holding otherwise would relieve the employer of any responsibility under the WPCA and the CCPA with respect to its employees.  See id.  The court therefore found it "sound to conclude that employers are subject to" both the WPCA and the CCPA.  Id.

Later, in Rotruck v. Smith, the Supreme Court of Appeals again considered an alleged violation of the WPCA from a former employee.  The petitioner-employee, Ms. Rotruck, worked as a sales associate for an insurance company and was to be compensated by commission only.  2016 WL 547190 at *1.  Ms. Rotruck never obtained the necessary license to sell insurance, so she could not lawfully earn a commission, but she was

nonetheless paid some compensation for her services.  See id.
The employer also provided Ms. Rotruck with financial assistance
on occasion by paying for her car payments, gas, and some of her
medication, and by advancing her cash to cover emergencies.  See
id.  Ms. Rotruck was expected to reimburse these expenditures
from her future earnings, and the amounts advanced were deducted
from those earnings.  See id.  Ms. Rotruck was terminated
several months later,[5] and she filed suit alleging violations of
the WPCA.  See id. at *2.  The state trial court found that Ms.
Rotruck failed to state a claim and thus granted judgment
against her.  Id.

     On appeal, the Supreme Court of Appeals found that the
advances made to Ms. Rotruck were not wage assignments but
rather were "more akin to salary advances graciously provided in
response to Ms. Rotruck's financial need."  Id. at *5.  Relying
on the decision in Clendenin, the court reasoned that "there can
be an assignment to an employer only when the employer is a
creditor under the [CCPA]," and that "an employer is subject to

---

[5] Ms. Rotruck was terminated for the following reasons: (1) not
obtaining licenses in a timely manner as agreed when she was
hired, (2) being unable to perform her job duties, including the
completion of her insurance exam as per the agreement when she
began her position, despite numerous attempts by the employer to
modify the requirement to accommodate Ms. Rotruck's situation,
and (3) misleading the employer with regard to taking the
licensing examination.  See Rotruck, 2016 WL 547190 at *2.

the wage assignment requirements of W. Va. Code § 21-5-3(e) only when the employer also is a creditor of its own employee." Id. at *4.

Pursuant to the CCPA, a "consumer credit sale" is defined, in relevant part, as "a sale of goods, services or an interest in land in which . . . [c]redit is granted either by a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card." W. Va. Code § 46A-1-102(13)(a) (2015). Based on this definition, the court in Rotruck reasoned that the employer was not a creditor of Ms. Rotruck because the advances did not qualify as "consumer credit sales." Rotruck, 2016 WL 547190 at *5. The court also determined that the advances did not qualify as a "consumer loan" because the employer was not "regularly engaged in the business of making loans." Id. (citing W. Va. Code § 46A-1-102(15)). In contrast, the court noted that the employer in Clendenin was a creditor because it engaged in the sale of commercial products to its own employees in consumer credit transactions. See id.

AT&T asserts that Rotruck relies on Clendenin to conclude that "an employer is subject to the wage assignment requirements of [the WPCA] only when the employer is also a creditor of its own employee." See Def.'s Reconsider Mem. at

10–11 (quoting Rotruck, 2016 WL 547190 at *4).  AT&T contends
that Rotruck is dispositive in this case because AT&T did not
serve as a creditor to its employees with respect to the
commission advances.  However, AT&T's reading of Clendenin is
far too restrictive.  Clendenin merely states that the wage
assignment requirements "include[] an employer when that
employer is also the creditor of the employee."  See Clendenin,
305 S.E.2d at 338 (emphasis added).  Furthermore, Clendenin
unequivocally affirms that "it would be inconsistent" to exempt
employers from the requirements of the WPCA.  See id. at 337.
AT&T's asserted narrow application of the WPCA also conflicts
with the analysis of the Supreme Court of Appeals that the WPCA
is "remedial legislation designed to protect working people" and
must be construed "liberally so as to furnish and accomplish all
the purposes intended."  Meadows v. Wal-Mart Stores, Inc., 530
S.E.2d 676, 688 (W. Va. 1999) (citation omitted).

        The holding from Rotruck, an unpublished opinion, that
an employer is only subject to the WPCA wage assignment
requirements when it acts as a creditor of its own employee,
conflicts with published opinions of the Supreme Court of
Appeals.  In Jones v. Tri-City Growers, Inc., the Supreme Court
of Appeals held that the WPCA wage assignment requirements
applied to an agricultural employer when the employer withheld

wages of foreign workers in order to pay certain expenses.[6]  366
S.E.2d at 728-31.  There was no discussion of a creditor
relationship between the employer and the workers, and the Court
cited its own published opinion in Clendenin to support the
holding.  See id. at 730-31.  The court in Robertson v. Opequon
Motors, Inc. also concluded that the WPCA wage assignment
requirements applied to an employer car dealership.  519 S.E.2d
at 850.  The court found that the commissioned car salespeople
"never executed valid wage assignments for [withholdings] as
required by the [WPCA]."[7]  Id.  Again, there was no discussion of
a creditor relationship.  See id.  AT&T's case is more like
Robertson than the single employee scenario in Rotruck because
the practices in Robertson and of AT&T both involve a policy
applied to multiple salespeople to deduct commissions.
Furthermore, to the extent that AT&T has paid an employee a

---

[6] The withholdings were used to: (1) reimburse the employer for
any expenses incurred when a worker does not return to Jamaica
at the end of the contract; (2) secure expenses of repatriation,
including return transportation costs; (3) repay transportation
advances; (4) repay the Jamaican government for any sums
advanced to the workers; and (5) provide insurance.  Jones, 366
S.E.2d at 728.

[7] The withholdings included "any costs associated with a
customer's use of a credit card" in purchasing the vehicle, and
the costs for "repairs made to cars that the employees had sold"
after a customer had taken delivery of the vehicle.  Robertson,
519 S.E.2d at 850.  The employer passed the total amount of
these costs onto the salespeople in the form of the
withholdings.  See id.

commission for goods or services that have not vested, if the goods or services are returned or terminated and the commission is cancelled, AT&T can be regarded as a creditor of its employee until it recoups the commission so paid.

In State v. McKinley, the Supreme Court of Appeals adopted a three-tier system of precedent to clarify the weight and authority of its opinions. 764 S.E.2d 303, 306 (W. Va. 2014). The first and highest tier is published signed opinions containing original syllabus points, which have "the highest precedential value because the Court uses original syllabus points to announce new points of law or to change established patterns of practice by the Court." Id. at 313. The second tier is published signed opinions that do not contain original syllabus points but "also carry significant, instructive, precedential weight because such opinions apply settled principles of law in different factual and procedural scenarios than those addressed in original syllabus point cases." Id. Both tiers "should be the primary sources relied upon in the development of the common law." Id.

The third and lowest tier is memorandum decisions, which are "decisions by the Court that are not signed, do not contain a Syllabus by the Court, and are not published." Id. Citation to a memorandum decision must clearly denote that a

23

memorandum decision is being cited.  Id. at 311–12 (citing W.

Va. R. App. P. 21(e)).  Memorandum decisions "may be cited as

legal authority, and are legal precedent, [but] their value as

precedent is necessarily more limited; where a conflict exists

between a published opinion and a memorandum decision, the

published opinion controls."  Id. at 313; see, e.g., State v.

Deel, 788 S.E.2d 741, 749 (W. Va. 2016) (applying McKinley to

overrule a previous memorandum decision "only insofar as that

decision directly conflicts with our established law").

         Federal courts exercising jurisdiction through

diversity of citizenship must apply state substantive law.  Erie

R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also

Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir.

1978) ("[F]ederal courts are to apply the substantive law the

State in which they are sitting would apply if the case had

originated in a State court.").  Removal in this case was based

on the diversity jurisdiction underlying CAFA.  This court must

therefore consider the relevant case law from the Supreme Court

of Appeals of West Virginia.  Based on the previous review of

the cases, the unpublished memorandum opinion in Rotruck, as the

state circuit court judge aptly observed, conflicts with

published opinions of the Supreme Court of Appeals in Robertson,

Jones, and even Clendenin.  The published opinions of the

Supreme Court of Appeals are controlling and Rotruck, though it reached an equitable result, does not bind this court. Accordingly, as to Rotruck v. Smith, this court does not find a change in applicable law or clear error by the state circuit court in that respect that warrants reconsideration of the state court denial of summary judgment.

(2) *"Earned" Wages under the WPCA*

AT&T next argues that the state circuit court disregarded applicable case law holding that the WPCA protects only earned "wages," and that it is undisputed that the "chargeback" scheme never applied to earned "wages." According to AT&T, this case depends on whether "chargebacks" constitute wage assignments under the WPCA. See ECF No. 29 ("Def.'s Reconsider Reply") at 11.

The state circuit court found that this case was no different from Robertson, discussed supra, in which deductions from sales commissions were found to be wage assignments, or from Jones, also discussed supra, in which a wage assignment was applied to advances of transportation costs for foreign workers. See Order at 5. In Robertson, Jones, and this case, the state circuit court determined that the employees' commissions (or wages in Jones) were reduced due to costs incurred by the

employer for a particular sale or labor.  <u>See</u> <u>id.</u>  Because the "chargebacks" by AT&T only applied to commission advances and because "commissions" are included among the types of wages covered by the WPCA, the state circuit court concluded that AT&T's "chargeback" scheme was subject to WPCA requirements. <u>See</u> <u>id.</u>

> The WPCA defines "wages" as follows:
>
> The term "wages" means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation.

W. Va. Code § 21-5-1(c) (2015).  The term "wages" is statutorily defined to include "commissions."  <u>See</u> <u>id.</u>  However, the WPCA "does not establish how or when wages are earned."  <u>Gregory v.</u> <u>Forest River, Inc.</u>, 369 Fed.Appx. 464, 469 (4th Cir. 2010).

> The Supreme Court of Appeals of West Virginia has adopted the following general rule about commissions:

> As a general rule, a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer. The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped. This general rule may be altered by a written agreement by the parties or by the conduct of the parties which clearly demonstrates a different compensation scheme.

<u>Adkins v. Am. Mine Research, Inc.</u>, 765 S.E.2d 217, 220 (W. Va. 2014) (quoting <u>Vector Eng'g and Mfg. Corp. v. Pequet</u>, 431 N.E.2d 503, 505 (Ind. Ct. App. 1982)).

Based on this general rule, the Supreme Court of Appeals has determined that "the terms of the employment agreement will dictate when 'wages' are earned for purposes of becoming payable pursuant to the WPCA." <u>Id.</u> at 221. In <u>Adkins</u>, the Supreme Court of Appeals further clarified that:

> [T]he WPCA itself does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.

<u>Id.</u> at 220 (internal quotation marks omitted) (quoting <u>Weldon v. Kraft, Inc.</u>, 896 F.2d 793, 801 (3d Cir. 1990)); <u>see also</u> <u>Grim v. E. Elec., LLC</u>, 767 S.E.2d 267, 281 (W. Va. 2014) ("The amount of wages payable to an employee pursuant to the provisions of the WPCA is determined exclusively by the terms of the employment agreement.") (emphasis omitted); <u>Mullins v. Venable</u>, 297 S.E.2d 866, 869 (W. Va. 1982) (The [WPCA] is remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld."). For example, in <u>Gregory v. Forest River</u>, an employment agreement established that commissions would be paid on sold vehicles once the vehicles shipped rather than when the vehicles were invoiced.

369 Fed.Appx. at 466.  The Fourth Circuit determined that this employment agreement "d[id] not contravene any provision of the WPCA."  <u>Id.</u> at 469.

The employment agreement that dictates when wages are earned for purposes of becoming payable pursuant to the WPCA may be "written or in the form of a consistently applied unwritten policy."  <u>Adkins</u>, 765 S.E.2d at 220.  The applicable employment agreement in this case is the AT&T Sales Compensation Plan. Under the Plan, a "commission" is "a form of variable compensation Sales Team Members are eligible to earn, which may be subject to Chargebacks, Reconciliations and Manual Adjustments."  AT&T Plan at 4.  "Commissions are not earned for qualifying sales activity until the completion of the Vesting Period and verification of the sales activity by [AT&T].  Any monetary payment made prior to verification by [AT&T] is an Advance of the unearned Commission."  <u>Id.</u> at 61; <u>see also</u> <u>id.</u> at 4 ("Commissions are considered Advanced pending the expiration of the Vesting Period since they are subject to Chargebacks.").[8] Advanced payments for commissions are "not actually earned until expiration of the Vesting Period."  <u>Id.</u> at 3; <u>see also</u> <u>id.</u> at 37

---

[8] AT&T may also determine that a sales activity is "invalid, fraudulent, or otherwise contrary to policy."  AT&T Plan at 6. Commissions cannot be earned for these sales and any commissions already paid thereon are subject to "chargebacks."  <u>Id.</u>

("Commissions are considered Advanced until the expiration of the Vesting Period."); id. at 8, 42 (defining the "Vesting Period" as the number of days a sale must remain active for commissions to be earned).

Pursuant to the AT&T Sales Compensation Plan, the plaintiffs' commissions from the sale of products and services were not "earned" until the end of the 180-day Vesting Period. The advance payments that the plaintiffs received were also not "earned" until the end of the Vesting Period.  If the "chargebacks" were only applied to commissions before they completed the Vesting Period, they only applied to "unearned" commissions, in which case the "chargebacks" would not constitute an assignment of future wages under the WPCA.  See Adkins, 765 S.E.2d at 220.  The state circuit court did not consider the line of cases of Adkins, Grim, and Gregory that determined when wages are payable pursuant to the WPCA.  The failure to do so and to recognize the commission as unearned until the Vesting Period has run constitutes clear error of law. Reconsideration is warranted to prevent manifest injustice.

### (3)  *Additional Arguments for Reconsideration*

AT&T cites two unpublished opinions of this court in support of its motion to reconsider and its claim that it should

prevail on summary judgment as a matter of law: <u>Spano v. Metro.</u>
<u>Life Ins. Co.</u>, No. 2:09-CV-01243, 2011 WL 2180657 (S.D.W. Va.
June 2, 2011), and <u>Baylor v. Gen. Anesthesia Servs., Inc.</u>, No.
2:04-CV-01265, 2006 WL 2290707 (S.D.W. Va. Aug. 8, 2006).
Reliance on these cases for the motion to reconsider is limited
because the standard for reviewing a motion to reconsider is
whether the court committed a clear error of law in its
decision. Any error here would be in the law applicable <u>to the</u>
<u>state circuit court</u>. Federal district court opinions
interpreting state law are not binding on state courts. <u>Cf.</u>
<u>Lockhart v. Fretwell</u>, 506 U.S. 364, 376 (1993) (Thomas, J.,
concurring) (concluding that a state trial court is not bound by
lower federal courts' interpretation of federal law). The state
circuit court was not required to follow opinions of this court,
so the failure to follow <u>Spano</u> and <u>Baylor</u> cannot constitute a
clear error of law. Nevertheless, this court finds these two
opinions to be persuasive in AT&T's argument with respect to the
motions for summary judgment.

In its reply to the plaintiffs' response, AT&T also
presents two additional arguments in support of reconsideration.
First, AT&T argues that the "chargeback" scheme is consistent
with the remedial purposes of the WPCA. Def.'s Reconsider Reply
at 7–8. The court does not comment further on this argument

because the determination of "earned" wages is dispositive to reconsider the state court denial of summary judgment.  Second, AT&T argues that the plaintiffs' allegation that AT&T applied "chargebacks" in excess of the sale amounts is merely an attempt by the plaintiffs to create a genuine issue of material fact where none exists.  Id. at 9.  The court considers this argument below in the review of the motions for summary judgment.

### III. Motions for Summary Judgment

### A.   Legal Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.

The plaintiffs move for partial summary judgment on Count One only.  See ECF No. 42 at 1.  AT&T moves for summary judgment on both Count One and Count Two to dismiss the case in full with prejudice.  See ECF No. 43 at 1.

B.    Issue of Material Fact

Both parties assert, to varying degrees, that there are no genuine issues of material fact.  AT&T has asserted throughout the pleadings that material facts are not in dispute. See Def.'s Reconsider Mem. at 1, 3; Def.'s Reconsider Reply at 9-11; ECF No. 44 ("Def.'s Summ. J. Mem.") at 1; see also ECF No. 48 ("Def.'s Partial Summ. J. Opp.") at 2 ("The parties agree that the facts are not in dispute . . . .").  AT&T also argues that the entire case turns on a single question of law: "whether 'Chargebacks' constitute wage assignments under the WPCA."  See Def.'s Reconsider Mem. at 7; Def.'s Reconsider Reply at 11; Def.'s Partial Summ. J. Opp. at 2.

AT&T enumerates eight specific facts that it alleges are not in dispute in its memorandum that accompanies its summary judgment motion:

(1) AT&T's retail sales compensation plans determined and described the manner in which the plaintiffs earned commissions and in which AT&T calculated and paid their commission advances.

(2) The plaintiffs did not earn a commission on any given sale at the time of the sale.

(3) Each sale had to successfully complete a 180-day Vesting Period for the plaintiffs to actually earn a commission on that sale.

(4) If a customer cancelled a service or returned a product within the Vesting Period, the plaintiffs did not earn a commission on that sale.

(5) AT&T advanced commission payments to the plaintiffs on a monthly basis, regardless of the Vesting Period.

(6) Each commission payment AT&T provided to the plaintiffs was an advance for sales that had not yet successfully completed the vesting period.

(7) AT&T applied "chargebacks" only in calculating the amount of advances it made to the plaintiffs and never reduced the plaintiffs' earned commissions.

(8)   AT&T never applied a "chargeback" to calculate
the plaintiffs' commission advances that exceeded
the amount of the sale to which the "chargeback"
applied.

<u>See</u> Def.'s Summ. J. Mem. at 5.  The plaintiffs do not respond
specifically to this list.

The plaintiffs allege that "there are no material
disputes of fact regarding Defendant's failure to comply with
the [WPCA]."  Pls.' Partial Summ. J. Mem. at 5.  The plaintiffs
also assert that "there is no material dispute of fact that AT&T
regularly assigned the wages of Plaintiffs and its West Virginia
employees without first obtaining a valid wage assignment under
the WPCA," ECF No. 50 at 1; ECF No. 47 at 4, and that "there are
no disputes of fact regarding whether Defendant met the
requirements of the WPCA in assigning those wages," Pls.'
Partial Summ. J. Mem. at 13.

Upon review of the record, the court finds that at
least three genuine issues of material fact exist: (1) whether
AT&T ever applied "chargebacks" in excess of the commissions
advanced to the named plaintiffs; (2) whether AT&T ever applied
"chargebacks" to earned wages that were either vested
commissions or hourly wages; and (3) whether AT&T paid the named
plaintiffs, when they each left employment with AT&T, all of the

34

wages that they earned within the time period mandated by the WPCA.  The parties fail to provide any evidence for the court to assess these issues.

### (1) *"Chargebacks" in Excess of Commissions*

The plaintiffs allege that AT&T often applied "chargebacks" in excess of what was paid as commissions.  See Pls.' Reconsider Opp. at 7, 19; see also ECF No. 23-2, Ex. 2, Tr. at 28:2-29:7 ("[Y]ou may be charged back at a higher rate than you ever were compensated for that . . . sale."); ECF No. 23-3, Ex. 3, Tr. at 34:3-35:20 ("[W]e were charged back more than what we earned.").  This occurred when an employee was paid a certain amount of commission for selling a product and then the product's value went up in cost before the commission had vested.  Pls.' Reconsider Opp. at 7.  The plaintiffs also claim that an employee would lose part of a commission if a customer changed their mind about a product sold by the employee and selected a different product but maintained the account with AT&T.  Id.  The plaintiffs further allege that employees were not told how much they would be charged back for any specific item, nor were they told whether or how taxes and other deductions from a commission would be reconciled with the "chargebacks."  Id. at 7–8.

The state circuit court, in its order denying AT&T's motion for summary judgment, acknowledged that there was "a genuine issue of fact as to whether, <u>inter alia</u>, sums were deducted from commissions that exceeded the amounts advanced." <u>See</u> Order at 5 (emphasis omitted).

AT&T alleges that the plaintiffs failed to provide "a single example of this alleged practice." Def.'s Reconsider Mem. at 7. AT&T further alleges that the plaintiffs "attempt to create a genuine dispute of material fact where none exists" based on "unsupported and conclusory deposition testimony." Def.'s Reconsider Reply at 9; <u>see also</u> Def.'s Summ. J. Mem. at 2 (calling the plaintiffs' allegation a "manufactured factual dispute"). The plaintiffs maintain that "a material dispute of fact remains with respect to Plaintiffs' allegation that Defendant illegally assessed chargebacks which exceeded the initial commission amounts." <u>See</u> Pls.' Reconsider Opp. at 6-7.

AT&T provides a declaration from Donna Norwood-Cooper, a Sales Compensation Manager at AT&T, in which she states under penalty of perjury that "[AT&T] never applied a 'Chargeback' in an amount exceeding [the] amount of the <u>sale</u> to which the 'Chargeback' applied." ECF No. 43-1, Ex. 1 ¶ 9 (emphasis added). However, the plaintiffs' allegation is that the "chargebacks" often exceeded the amount of the <u>commission</u>

advanced, not that "chargebacks" often exceeded the amount of the sale on which the commission was based.  AT&T's brief in support of its motion for summary judgment exemplifies this misunderstanding.  On one page of the brief, AT&T correctly states the allegation as "Defendant illegally assessed chargebacks which exceeded the initial <u>commission</u> amount," but then dismisses the allegation on the same page because "[t]he evidence conclusively demonstrates that [AT&T] never applied a 'Chargeback' in excess of the amount of the <u>sale</u> to which the 'Chargeback' applied."  <u>See</u> Def.'s Summ. J. Mem. at 2 (emphasis added).[9]

Neither party provides any evidence to support or refute this allegation.  The declaration by Donna Norwood-Cooper, as noted, fails to address it.  The court cannot determine from the record whether AT&T ever applied "chargebacks" that exceeded the amounts of the commissions advanced to the named plaintiffs.

---

[9] AT&T also asserts that plaintiff Atkins "does not claim that [AT&T] ever applied 'Chargebacks' that exceeded the amount of the sale [sic, commission on the sale]," and so AT&T argues that it is "entitled to summary judgment against Atkins and any other class member who was not subject to this alleged practice."  <u>See</u> Def.'s Reconsider Reply at 9.

(2)   _"Chargebacks" to Earned or Unearned Wages_

While the first issue of material fact concerns whether "chargebacks" exceeded the amount of commissions, the second issue concerns to what "chargebacks" applied — earned wages or unearned (i.e., unvested) wages.  The basis of Count One of the complaint is that AT&T "illegally deducted chargebacks from Plaintiff[s'] employment wages . . . despite the fact that Defendant had not obtained a valid wage assignment from Plaintiffs."  Compl. ¶ 42.

It is undisputed that AT&T did not have a notary public, or other officer authorized to take acknowledgments, present to witness the plaintiffs acknowledge the terms and conditions of the sales compensation plans in order to receive commission payments.  However, neither party presents any evidence concerning to what monies the "chargebacks" were actually applied for each named plaintiff during each pay period.  An accounting of each applicable pay period for each named plaintiff is necessary to determine the hourly earned wages and vested commissions, "chargebacks" made against unvested commissions, and the extent to which the "chargebacks" reached earned wages if unvested commissions were insufficient to absorb "chargebacks" in a given pay period.  Without a complete accounting for each applicable pay period for each

named plaintiff, the court cannot determine whether
"chargebacks" were ever applied to earned wages in or after
September 2010, or, instead, were applied only to unearned wages
of the named plaintiffs.

### (3) *Timely Payment of Wages*

Count Two alleges that AT&T failed to pay the
plaintiffs "in full after the cessation of their employment all
of the wages they had earned by the time periods mandated by the
WPCA." Compl. ¶ 46. The plaintiffs allege that, upon their
separation, each "was not paid all his wages by the next regular
pay period and, in fact, still has not yet been paid all his
wages." See id. ¶¶ 25-30.

> The WPCA requires that:
>
> Whenever a person, firm or corporation discharges an
> employee, or whenever an employee quits or resigns
> from employment, the person, firm or corporation shall
> pay the employee's wages due for work that the
> employee performed prior to the separation of
> employment on or before the next regular payday on
> which the wages would otherwise be due and payable
> . . . .

W. Va. Code § 21-5-4(b) (2015).

AT&T claims that it paid the named plaintiffs their
"final commission advances in accordance with its regular
commission cycle" after the plaintiffs left employment. See

Def.'s Reconsider Mem. at 6. AT&T further contends that it did not apply "chargebacks" for any returns or cancellations that occurred after the plaintiffs left. See id. However, the plaintiffs allege that they were not paid all their wages by the next regular pay period after they left employment.[10] ECF No. 23-8, Ex. 8 (plaintiffs' supplemental responses to AT&T's first interrogatories).

Neither party addresses Count Two in their cross motions for summary judgment. As part of its motion to reconsider, AT&T argues that Count Two is derivative of Count One and thus can be decided based on the single question of law of whether "chargebacks" constitute wage assignments under the WPCA. Def.'s Reconsider Mem. at 7. This argument seems to be based on the idea that Count Two is entirely dependent on whether some wages remained unpaid to the plaintiffs because of the "chargebacks." However, the named plaintiffs were paid both hourly wages and commissions. Def.'s Reconsider Mem. at 3-4. Count Two is for the failure to pay "all of the wages [the plaintiffs] had earned," without distinction between hourly wages and commissions. Neither party addresses hourly wages

---

[10] Plaintiff Roach says that he provided at least two weeks' notice before quitting employment and that he was not paid his wage on the date he quit. ECF No. 23-8, Ex. 8 at 3. The parties do not address whether the date that plaintiff Roach quit coincided with the next regular pay period.

that may not have been timely paid in accordance with W. Va. Code § 21-5-4(b) after the named plaintiffs left employment. The parties have not demonstrated that there is no genuine issue of material fact as to whether AT&T paid the plaintiffs all the wages that they had earned — both hourly wages and commissions — within the time period mandated by the WPCA.

Due to the genuine issues of material fact regarding each of the three foregoing categories consisting of "chargebacks" in excess of commission advances, whether "chargebacks" were applied to earned or only to unearned wages, and whether AT&T paid all wages earned by a retiring named plaintiff pursuant to the WPCA deadline, the court cannot grant summary judgment to either party. However, the court does conclude, on the primary issue of law in this case, that the "chargebacks" made against unearned wages pursuant to the agreed-upon commission compensation plan did not constitute an assignment of wages governed by § 21-5-3(e) of the WPCA. As previously discussed, the WPCA wage assignment provision, W. Va. Code § 21-5-3(e), protects "earned wages." See Adkins, 765 S.E.2d at 220; Clendenin, 305 S.E.2d at 336. Commissions are a type of "wage" that may be covered under the WPCA. See W. Va. Code § 21-5-1(c) (2015). The terms of an employment agreement dictate when "wages" are "earned" for purposes of becoming

payable pursuant to the WPCA.  Adkins, 765 S.E.2d at 221; see
also Grim, 767 S.E.2d at 281; Syl. Pt. 5, Meadows, 530 S.E.2d at
679.  Under the AT&T Sales Compensation Plan, commissions were
not earned until the completion of the 180-day Vesting Period
and verification of the sale.  AT&T Plan at 61.  Any monetary
payment to an employee before the end of the Vesting Period was
an advance of unearned commissions.  Id. at 3, 4, 37, 61.  Any
"chargebacks" that applied to advanced commissions that had not
yet completed the Vesting Period were not an assignment of wages
and thus did not violate the wage assignment provision of the
WPCA.

### IV.   Conclusion

AT&T satisfies the standard for granting a motion to
reconsider an interlocutory order because the state circuit
court failed to consider applicable case law regarding when
wages are "earned" pursuant to the WPCA.  Accordingly, it is
ORDERED that the defendant's motion to reconsider be, and it
hereby is, GRANTED.

On separate review of the parties' cross motions for
summary judgment, the court finds that neither party has
established that a genuine issue of material fact does not
exist.  It is therefore ORDERED that the plaintiffs' motion for

partial summary judgment be, and it hereby is, DENIED; and the defendant's motion for summary judgment be, and it hereby is, DENIED.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: June 1, 2020

John T. Copenhaver, Jr.
Senior United States District Judge